YEISLEY *v.* BENNETT.

LAND CONTRACTS—CONSTRUCTION—TITLE TO CROPS.

> An owner of land contracted to convey it to a purchaser on payment of a certain sum, and by the terms of the contract it was agreed that the hay raised on a part thereof for certain designated years should be properly harvested by the purchaser and delivered to the vendor, he to take it at the current market value, and credit it on the purchase price, and the purchaser to have possession of the land. *Held,* that the vendor had title to the hay grown on the designated land during the years stipulated.

Error to Saginaw; Wilber, J. Submitted June 7, 1899. Decided September 27, 1899.

Trover by Gilbert Yeisley against John H. Bennett. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Watson & Chapman,* for appellant.

*Frank E. Emerick,* for appellee.

MOORE, J. Plaintiff brought suit in trover in justice's court. The case was appealed to the circuit court. The plaintiff appeals from a judgment rendered in the case, which was entered by direction of the circuit judge.

In March, 1896, Mr. Burrows made a contract with plaintiff to sell him a piece of land, and to execute to him a deed of it upon certain conditions. Those in relation to payment were that plaintiff should assume the payment of a mortgage which was upon the land, and pay the further sum of $900, as follows:

"One hundred dollars on the delivery of these presents, the receipt of which is hereby acknowledged; all the wheat and one-half of the straw raised in the year 1896 on the twenty-six acres of land now in wheat on the afore-

said southeast one-quarter of the southeast one-quarter of section twenty-two; all the hay raised on said twenty-six acres of land in the years 1897 and 1898,—said wheat, straw, and hay to be properly cared for, harvested, and cured by the said second party, and delivered to said first party at the village of Chesaning, Michigan, the wheat at threshing time, and the hay as soon as suitable for baling. Said first party to take said wheat, straw, and hay at the then market price, and from the same pay the interest on the aforesaid mortgage for the then current year, and apply the balance on the amount then remaining unpaid on this contract," etc.

The wheat grown on the land in 1896 was delivered to Mr. Burrows, and the avails thereof applied as agreed in the contract. In 1897, Mr. Yeisley conceived the idea that he did not have to deliver the hay to Mr. Burrows, but might himself sell it and put the money in his pocket. "I had no intention of delivering that hay to Mr. Burrows at Chesaning under that contract after it was baled. I said I didn't have to." He told Mr. Burrows and his agent, Mr. Mudge, it was his hay, and he intended to keep it. He cut the hay, and removed it to the Palmer place, which he had rented, about 60 rods away, and stacked it. About three weeks later, Mr. Burrows sued out a writ of replevin, which was served by Mr. Bennett, the defendant, who was an officer. The hay was sold by Mr. Burrows for $132.50, which amount was indorsed upon the contract. The plaintiff then sued Mr. Bennett in trover for a conversion of the hay, and the circuit judge, as before stated, directed a verdict in favor of defendant.

Counsel urge that, before the replevin case could be brought, Mr. Burrows should have made a demand for the property; that the contract was an executory one, in which there were conditions precedent to the transference of title, and a verdict should have been directed in favor of plaintiff. Counsel mistake the issue. This is not a trial of the replevin case. What Mr. Bennett did must be regarded as the act of Mr. Burrows. The title to the land remained in Mr. Burrows, and was to remain there

until certain things were done. Among them was that the hay grown upon the land should be harvested and cured by the plaintiff, and properly cared for, and delivered to Mr. Burrows as soon as it was suitable for baling. Mr. Burrows was to receive it at the market price, and apply the proceeds first to the payment of the interest on the mortgage, and the balance on the contract. There was no question about what was to be delivered to Mr. Burrows. It was all the hay which should be grown upon lands that were definitely described and well known, the title to which was yet in him; and a fair construction is that the language put in the contract was used to insure the application of the value of the product to the payment of the sum which Mr. Yeisley had agreed to pay.

As we have already seen, when the hay was suitable for baling, instead of delivering it to Mr. Burrows, Mr. Yeisley undertook to convert it to his own use, which he had no right to do. The title to the land was in Mr. Burrows, and ordinarily the title to the product follows the title to the land. Here the parties undertook, as I think, to provide that the title to the hay should not pass to Mr. Yeisley, but that he should care for it for Mr. Burrows, and, as soon as it was suitable for baling, should deliver it to him.

The circuit judge made a right disposition of the case. Judgment is affirmed.

The other Justices concurred.